UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FELIPE GARCIA, CDCR #H-74821,

Plaintiff,

vs.

SCOTT KERNAN, Secretary; DANIEL
PARAMO, Warden; E. ALVAREZ,
Correctional Sergeant; IGNACIO
BRAVO, Correctional Officer; S. HALL,
Sub-Contractor; J. JUAREZ, Associate
Warden; B. VOGEL, Correctional
Counselor II; M. VILLAFUERTE,
Correctional Counselor II;
P. COVELLO, Associate Warden,

Defendants.

Case No.: 18-CV-2313 JLS (MSB)

**ORDER: (1) GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R.
CIV. P. 12(b)(6), AND
(2) DISMISSING CLAIMS AGAINST
UNSERVED PARTIES PURSUANT
TO 28 U.S.C. §§ 1915(e)(2)(b)(ii) AND
1915A(b)(1)**

(ECF No. 14)

Plaintiff Felipe Garcia, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

## BACKGROUND

Plaintiff alleges various prison officials at RJD violated his First, Eighth, and Fourteenth Amendment rights in 2017 and 2018 by using excessive force, failing to protect him, and retaliating against him for having filed previous civil rights lawsuits,

administrative grievances, and staff complaints. *See* ECF No. 1 ("Compl.") at 13–14. Six of those RJD officials, E. Alvarez, P. Bracamonte, I. Bravo, P. Covello, J. Juarez, and D. Paramo ("Defendants") have filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 14 ("Mot.").[1] Plaintiff has filed an Opposition, *see* ECF No. 16 ("Opp'n), to which Defendants were granted permission to file a late Reply. *See* ECF Nos. 17, 19 ("Reply"). In light of the leeway granted Defendants, on June 11, 2019, the Court granted Plaintiff permission to file a Sur-Reply. *See* ECF No. 22. He filed one on June 24, 2018. *See* ECF No. 23 ("Sur-Reply.").

Defendants' Motion is now fully-briefed, and having considered these pleadings, the Court has determined no oral argument is required and no Report and Recommendation by the assigned Magistrate Judge is necessary. *See* S.D. Cal. CivLR 7.1(d)(1) (court may determine motions upon the moving papers and without oral argument); S.D. Cal. CivLR 72.3(a) (referring § 1983 prisoner caseload to magistrate judges for disposition "unless the district judge orders otherwise"); *see also* ECF No. 15.

For the reasons set forth more fully below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion Dismiss (ECF No. 14). Specifically, the Court finds that Plaintiff alleges facts sufficient to state a plausible First Amendment retaliation claims as to Defendants Bravo, Alvarez, and Bracamonte. The Court further finds, however, that Plaintiff fails to allege a plausible Eighth Amendment failure to protect claim against Alvarez, Paramo, Covello, and Juarez; fails to allege a plausible Fourteenth Amendment due process violation as to any Defendant; and fails to allege compliance with California's Government Claims Act with respect to his state law assault and battery

---

[1] The remaining named Defendants—S. Hall, an inmate labor sub-contractor, and Correctional Counselors Vogel and Villafuerte—do not appear to have been served. Ninety days have elapsed since the Court issued a summons and directed U.S. Marshal Service pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3); no proof of service has been filed on behalf of Defendants Hall, Vogel, or Villafuerte; and Plaintiff has failed to request an extension of time in which to serve them. *See* ECF Nos. 5, 6.

claims. Finally, the Court **DISMISSES** all claims alleged against unserved Defendants Hall, Vogel, and Villafuerte *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1) and **ORDERS** Defendants Bravo, Alvarez, and Bracamonte to file an Answer pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

**DEFENDANTS' MOTION TO DISMISS**

## I. Standard of Review

To survive a motion to dismiss, the complaint must contain sufficient "well-pleaded, nonconclusory factual allegation[s]," accepted as true, to state "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009). Dismissal is appropriate when the complaint lacks a "cognizable legal theory" or sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652 (9th Cir. 2019) (citation omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."). But while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks / / /

18-CV-2313 JLS (MSB)

omitted)[2]; *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "New or expanded allegations" offered in opposition to a motion to dismiss, on the other hand, may be considered when deciding whether to grant leave to amend but are "irrelevant" when considering whether the currently operative pleading states a claim upon which relief can be granted pursuant to Rule 12(b)(6). *Schneider*, 151 F.3d at 1197 n.1; *see also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003); *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1114 (S.D. Cal. 2018), *appeal dismissed*, No. 18-55434, 2018 WL 3244047 (9th Cir. May 23, 2018); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co*., 780 F. Supp. 2d 1061, 1075 n.10 (D. Haw. 2011) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation and internal quotations omitted).

## II.  Defendants' Arguments

Defendants seek dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) Plaintiff fails to allege the deprivation of a liberty

---

[2]  *See* Fed. R. Evid. 201(b)(1) (court may take judicial notice of facts that are readily capable of accurate determination by sources whose accuracy cannot reasonably be questioned); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) (court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when considering a 12(b)(6) motion); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are *not* physically attached to the pleading, may [also] be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (internal quotation marks omitted), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). The Court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Because Defendants do not object to the request for judicial notice Plaintiff includes in his Opposition and do not challenge the authenticity of any of his exhibits in their Reply, the Court will consider Plaintiff's exhibits as part of his pleading for purposes of Rule 12(b)(6) because their contents are incorporated by reference in his Complaint. *Id.*; *see also Tellabs, Inc.* 551 U.S. at 322.

interest protected by the Fourteenth Amendment with respect to his initial placement in Ad-Seg on February 6, 2017; (2) even if Plaintiff has alleged a protected liberty interest with respect to the April 12, 2018 RVR hearing, those claims are barred by the "favorable termination" doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) Plaintiff fails sufficiently to allege Eighth Amendment excessive force and First Amendment retaliation claims with respect to any Defendant *except* Officer Bravo; (4) Plaintiff fails to allege a plausible Eighth Amendment failure to protect claim based with respect to any Defendant; and (5) Plaintiff's pendent state law assault, battery, and negligence claims must be dismissed because he fails to allege he timely presented those claims to the Victim Compensation Board in compliance with California's Government Claims Act before bringing suit. *See* ECF No. 14-1 ("Defs.' P&As") at 12–20.

## III. Plaintiff's Opposition

Plaintiff admits he did not pursue his pendent state law claims as required by the California Government Claims Act and therefore voluntarily dismisses his causes of action for battery, assault, and negligence. *See* Opp'n at 3, 23–24. He opposes dismissal, however, on all other grounds, *see id.* at 12–22, and asks the Court to take judicial notice of various attached exhibits, comprising of his inmate CDCR 602 Inmate Parolee Appeal Log No. RJD-18-00877, submitted February 20, 2018; Log No. RJD-18-01260, submitted February 27, 2018; Log No. RJD-18-01958, submitted March 27, 2018; and various administrative responses to them. *See id.* at 54–56, 58–74, 78–85, 94. He further requests judicial notice of a copy of CDCR Form 837 Incident Report Log No. RJD-CEN-18-02-0072, dated February 6, 2018, *id.* at 87–88, and related Rules Violation Report Log No. 04393632 documentation authored by Officer Bravo on February 7, 2018, *id.* at 86; an RVR Supplemental Report dated February 8, 2018, *id.* at 89; another RVR Supplemental Report dated February 26, 2018, filed by Correctional Officer Avila, *id.* at 90–92; a General Chrono dated November 29, 2018, indicating that the charges alleged in Incident Report Log No. RJD-CEN-18-02-0072 had been declined for criminal prosecution by the San Diego County District Attorney's Office and referred back to be "handled administratively

at RJDCF," *id.* at 39; the Disciplinary Hearing Results for Rules Violation Report Log No. 04393632, held on December 23, 2018, *id.* at 40–43; and three Classification Committee Chronos dated February 15, 2018, April 12, 2018, and January 28, 2019. *Id.* at 45–52.

## IV. Plaintiff's Allegations

Plaintiff claims that between the months of February 2017 and September 2017, he was engaged in settlement negotiations in *Garcia v. Hobmeier*, No. 1:14-CV-625 LJO (SAB) (E.D. Cal. filed Apr. 28, 2014), which he had filed in the Eastern District of California. *See* Compl. at 5–6. During that time, Plaintiff claims Officer Bravo escorted him from his assigned job to meet with a Deputy Attorney General and, as a result, Officer Bravo "found out … [Plaintiff] was suing CDCR." *Id.* at 6.

On July 24, 2017, Plaintiff claims Officer Bravo and Sgt. Alvarez arrived at Plaintiff's worksite to inspect for contraband. Finding none, Plaintiff claims Officer Bravo escorted him "behind the construction site and out of site [sic] of [the] other officer and Sergeant," pushed him against a wall, and conducted a "strip search in a very truculent and disrespectful" manner by "grabbing [his] privates." *Id.* After Officer Bravo re-cuffed and ordered Plaintiff to dress, he escorted him back to Sgt. Alvarez and "commented" that Plaintiff was "suing CDCR." *Id.* at 6–7. Plaintiff contends Sgt. Alvarez stated: "[H]ere at Donovan we don't care if you sue us." *Id.* at 7. Officer Bravo further "emphasized that his sexual and retaliatory harassment was because of [Plaintiff's] lawsuits" and then "voiced a credible threat" during the escort back to his housing unit: "You['d] better quit or else it's going to get real bad for you." *Id.* The next day, Plaintiff claims Officer Bravo again threatened that if Plaintiff did not "quit voluntarily," Officer Bravo would "write [him] up a '115' violation to get [him] fired." *Id.*

Two days later, on July 27, 2017, Plaintiff claims Officer Bravo fulfilled his "promise" and issued a "false" CDC 115 Rule Violation Report ("RVR"), charging Plaintiff with "overfamiliarity," and "fired Plaintiff from [his] job." *Id.* While Plaintiff was later found not guilty of the disciplinary offense on September 4, 2017, he claims Officer Bravo denied him access to his job while the charges were pending and

"commented that [he] would not get [it] back due to [the] submi[ssion of] a 602 staff complaint," RJD-D-17-3897, dated July 25, 2017. *Id.* at 7–8. Plaintiff claims he "elected to withdraw" the 602 staff complaint on September 28, 2017, "due to threats by C/O Bravo[,] including but not limited to 'Stop filing staff complaint[s] or you['re] going to be transferred out and refused to go back to work, even thou[gh the] rule violation was dismissed.'" *Id.* at 8.

Plaintiff claims he was eventually allowed back to work on October 17, 2017, after which Warden Paramo "authored a letter" finding Plaintiff's claims of retaliation on Bravo's part "unfounded." *Id.*

Several months later, on February 5, 2018, while on inmate work labor duty, Plaintiff claims he was assigned to demolish two doorways using a concrete saw and was supervised by Defendant Hall, a subcontractor. *Id.* at 4, 10. When he accidently dropped the saw the water feed broke, Plaintiff claims Hall yelled: "You dumb wetback[!] You broke the saw." *Id.* at 10. An "argument took place," but Plaintiff claims Hall "admitted he was having a bad day," and the two of them "agreed that [they] would work to finish the project." *Id.* Plaintiff claims that "at no time" did Hall say he was threatened, and no report or further comments were made. *Id.* at 8, 10.

On February 6, 2018, however, Plaintiff alleges Officer Bravo, who not present on the job site the day before, "falsified [and] altered a[n] incident report alleging Plaintiff [had] threatened to kill" a "public official" (Hall) on February 5, 2018. *Id.* at 8. Plaintiff was "illegally placed in Ad-Seg" due to "false Rule Violation Log No. RJD-CEN-18-02-0072." *Id.* at 9. While escorting him to Ad-Seg, Plaintiff contends Officer Bravo remarked: "That's what happens when you file lawsuits." *Id.* And when Plaintiff again saw Officer Bravo outside the entrance of the "CTC TTA" clinic on February 7, 2018, Officer Bravo commented: "Now you can file more lawsuits; we don't care." *Id.* Plaintiff contends Officer Bravo "pressured" Hall (the sub-contractor) to "write fictitious and false reports to have [him] removed from his job assignment in retaliation for [Plaintiff's] filing

/ / /

18-CV-2313 JLS (MSB)

"[a] sexual misconduct staff complaint and lawsuits." *Id.* at 9, 11. On February 27, 2018, Plaintiff filed a staff complaint alleging Hall had violated CDCR policy. *Id.* at 11.

On April 12, 2018, seven days past his "earliest release date from Ad-Seg," Plaintiff contends he was "stripped of his privileges [and] credits" at a "kangaroo hearing" regarding the February 6, 2018 work incident involving Hall. *Id.* at 11–12. During these proceedings, Plaintiff claims Defendants Villafuerte, Bracamonte, Paramo, Covello, Juarez, and Vogel violated his rights to due process by "not holding a ASU placement review," refusing him witnesses, and by "providing an inadequate written disposition not supported by official records." *Id.* at 14. Plaintiff further claims placement in Ad-Seg and the disciplinary proceedings that followed as a result of the February 2018 incident were also taken in retaliation for his having exercised his First Amendment rights—either for "successfully litigating" *Garcia v. Hernandez*, No. 1:13-CV-599 LJO (SKO) (E.D. Cal. filed Apr. 25, 2013), and *Garcia v. Hobmeier*, No. 1:14-CV-625 LJO (SAB) (E.D. Cal. filed Apr. 28, 2014), or for "filing 602 grievance/staff complaints." *Id.* at 9–10, 11–12, 14, 15–16. Plaintiff specifically alleges Captain Bracamonte, like Officer Bravo, made a "credible threat" against him at some point during the course of these proceedings: "Now you['re] going in to my yard, you will see how we deal with lawsuit and staff complaint filers." *Id.* at 12.

## ANALYSIS

### I.    Fourteenth Amendment Due Process Claims

#### A.    *February 6, 2018 Ad-Seg Placement*

Defendants first seek dismissal of Plaintiff's due process claims related to his initial Ad-Seg placement on February 6, 2018. *See* Defs.' P&As 12–13. Plaintiff claims his segregation "was not conducted in accordance with" Section 3336 of title 15 of the California Code of Regulations because "no captain spoke to [him]" before February 15, 2018, and he was "stripped . . . of all privileges and placed/retained in Ad-Seg" based, in part, on Defendant Bracamonte's "false claims that a[n] [Ad-Seg] placement review was

/ / /

held on February 7, 2018."[3]  Compl. at 9–10.  Defendants argue these allegations are insufficient to support a Fourteenth Amendment violation because "prison regulations do not create liberty interests" and because Plaintiff fails to allege facts sufficient to show he suffered any "atypical and significant hardship" as a result of having been subject to segregation for "ten days before he was interviewed by a captain."  Defs.' P&As at 12–13.

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation.  *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff*, 418 U.S. at 564–71).  "Such protections include the rights to call witnesses, to

_____

[3] Section 3336 of title 15 of the California Code of Regulations provides that "[a]n inmate's administrative segregation placement shall be reviewed for retention or release by staff at the level of Captain, CCIII or higher, on the first business day following such placement.  The review shall include: the inmate's case factors, reason(s) for segregation, and an interview with the inmate unless the inmate refuses to participate."  Cal. Code Regs., tit. 15 § 3336(b); *see also Shepard v. Quillen*, 840 F.3d 686, 690 (9th Cir. 2016) (discussing Cal. Code Regs., tit. 15 §§ 3335, 3336 and the CDCR "114–D" Form provided to the inmate giving "various explanations as to why [he] was placed in administrative segregation").  In *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986), the Ninth Circuit specifically found that prior versions of Sections 3335 and 3336 created a liberty interest requiring the procedural protections guaranteed by *Wolff v. McDonnell*, 418 U.S. 539 (1974).  *See Toussaint*, 801 F.2d at 1097-98.  *Toussaint*, however, was later abrogated in part by *Sandin v. Conner*, 515 U.S. 472 (1995).  *See infra*.

There is no independent cause of action for a violation of Title 15 regulations.  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1391 (9th Cir. 1997) (citing *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996)).

present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis and, "[i]n *Sandin*'s wake[,] the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064–65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

To the extent Plaintiff claims his initial placement in Ad-Seg on February 6, 2018, as a result of Defendant Bravo's RVR Log. No. RJD-CEN-18-02-0072 Incident Report was "illegal" because he was not granted an interview with a captain "on the first business day following placement" pursuant to Section 3336(b), *see* Compl. at 9, the Court agrees Plaintiff fails to allege the type of "atypical and significant hardship" required to invoke a liberty interest under *Sandin*. "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is

18-CV-2313 JLS (MSB)

not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484).

The fact that Plaintiff was retained in Ad-Seg from February 6, 2018, and not interviewed until February 15, 2018, by Bracamonte, a Unit Captain, is insufficient, by itself, and without any further allegation of harm to plead a plausible Fourteenth Amendment claim.[4] *See Sandin,* 515 U.S. at 485–86 (prisoner's 30 days of segregated confinement did not implicate due process because the conditions under which he was confined were not alleged to have "present[ed] a dramatic departure from the basic conditions of [his] indeterminate sentence," "did not work a major disruption in his environment," and did not "inevitably affect the duration of his sentence"); *Serrano*, 345 F.3d at 1078 (placement in Ad-Seg does not generally amount to atypical and significant hardship); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (placing a prisoner in disciplinary segregation for 14 days for violating prison regulations did not violate a constitutionally protected liberty interest); *Richardson v. Runnels*, 594 F.3d 666, 672–73 (9th Cir. 2010) (administrative segregation for two weeks pending a gang investigation did not constitute the deprivation of a protected liberty interest); *Robinson v. Gonzalez*, No. CV 11-5639 DOC (JEM), 2012 WL 405006 at *6 (C.D. Cal. Feb. 7, 2012) (plaintiff failed to allege that his initial placement in administrative segregation pending the outcome of his gang validation process constituted an atypical or significant hardship); *Gray v.*

---

[4] Plaintiff alleges that "no captain spoke to [him] until Capt. P. Bracamonte, Corrections Counselor A. Taylor Garcia, and Associate Warden P. Covello" decided to "retain [him] in Ad-Seg" on February 15, 2018. *See* Compl. at 9. The Classification Committee Chrono dated February 15, 2018, documenting this "Initial ASU [Ad-Seg Unit] Review and Pre-MERD Review" and attached to Plaintiff's Opposition, indicates that the "ASU Placement Notice administrative review was conducted on 2/7/18, by Captain P. Bracamonte," and that Taylor-Garcia and Covello elected to retain Plaintiff in Ad-Seg pending adjudication of RVR Log No. 4393632 dated February 5, 2018, for "threatening to kill a public official." *See* Opp'n at 45–46. This same exhibit indicates Plaintiff "elected to postpone hearing of the RVR pending the outcome of [a] district attorney referral." *Id.* at 45; *see also* Opp'n at 39 ("RJDCF-D.A. Referral/Rejection" dated November 29, 2018).

*Woodford*, Civil No. 05-CV-1475 J (CAB), 2007 WL 2789476 at *4 (S.D. Cal. Aug. 16) (recommending dismissal of prisoner's due process claim based on 90-day stay in administrative segregation pending investigation of possible gang activities for failing to allege "atypical and significant hardship" required under *Sandin*), *adopted in relevant part,* 2007 WL 2790588 at *4 (Sept. 25, 2007).

### B.     April 12, 2018 "Rules Violation Report Hearing"

Defendants next argue that *Heck*'s "favorable termination doctrine" bars any due process claim related to Plaintiff's April 12, 2018 RVR hearing. *See* Defs.' P&As at 13–14. Specifically, Defendants claim that because Plaintiff "admits that he was found guilty of threatening to kill subcontractor Hall" and that this led to the loss of conduct or "good-time" credits, an award of damages based on an alleged denial of due process on April 12, 2018, would "negate" that guilty finding, shorten his prison sentence, and, consequently, may not be maintained in a § 1983 action "unless and until" that disciplinary conviction is reversed or otherwise invalidated. *Id.* at 14–15.

Plaintiff claims Defendants Bracamonte, Paramo, Juarez, Covello, Villafuerte, and Vogel all violated his due process rights on April 12, 2018, at a "kangaroo hearing" conducted "7 days past [his] earliest release date from Ad-Seg of 4/5/18." Compl. at 14. While not altogether clear, Plaintiff does not appear to challenge the validity of his eventual disciplinary *conviction* related to the "false" Incident Report Log No. RJD-CEN-18-0200072, filed by Defendant Bravo on February 5, 2018. Instead, Plaintiff claims he was denied due process at either the "Initial ASU Review and Pre-MERD Review" held on February 15, 2018, or the April 12, 2018 "ASU Subsequent" review hearing, between which he was retained in Ad-Seg pending adjudication of RVR Log No. 439363 and in which he was initially charged with threatening to kill a public official (Hall) but was ultimately convicted of the lesser included offense of committing "behavior which could lead to violence" and assessed a 30 day credit forfeiture. *See* Compl. at 14; Opp'n at 45–46 (Classification Committee Chrono dated February 15, 2018), 48–49 (Classification Committee Chrono dated April 12, 2018); *cf.* Opp'n at 40–43 (Disciplinary Hearing

Results, RVR Log No. 4393632, dated December 23, 2018). Specifically, Plaintiff contends Defendants Bracamonte, Paramo, Juarez, Covello, Villafuerte, and Vogel denied him due process on February 15, 2018, and again on April 12, 2018, by not "holding a[n] ASU placement review" or "allowing [him] to call witnesses"; by "stripping his privileges, work assignment, classification override"; retaining him in Ad-Seg "past his MERD"; and "providing an inadequate written disposition not supported by official records," when he "was not *yet* found [guilty] of [Bravo's] fictitious rule violation." Compl. at 14 (emphasis added).

Indeed, in his Opposition, Plaintiff confirms that, in addition to serving as an "adverse action [taken] in retaliation" for exercising his First Amendment rights, his due process claims "stem[] from Defendant Bravo['s] false and incorrect charge . . . for [a] 'threat to kill a public official,'" which resulted in his being "subjected to [a] criminal charge on the basis of false evidence." *See* Opp'n at 2, 12. Thus, Plaintiff claims Defendant Bravo deliberately fabricated his February 7, 2018 Rules Violation Report, *see* Opp'n at 75, and that Defendants Bracamonte, Paramo, Juarez, Covello, Villafuerte, and Vogel "knew or should have known that [the] alleged victim (Hall) was not a public official" and therefore should not have retained Plaintiff in Ad-Seg pending review of those "false charges." Opp'n at 2, 14.

Plaintiff further argues his due process claims are based on *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), and are "not barred by the favorable termination doctrine," because "the RVR in question was adjudicated on 12-23-2018," "dropped to a 'behavior that could lead to violence' offense," and his "30 day loss of credit has now been restored" pursuant to section 3324(c) of title 15 of the California Code of Regulations. *See* Opp'n at 16, 40–43; Sur-Reply at 3–4.

Insofar as Plaintiff admits his due process claims are premised on Defendant Bravo's allegedly false February 7, 2018 RVR and Defendants Bracamonte, Paramo, Juarez, Covello, Villafuerte, and Vogel's alleged reliance on that RVR to retain him in segregation pending the disposition of his disciplinary charges in RVR Log No. 4393632, the Court

finds he has failed to state a plausible due process claim. *Iqbal*, 556 U.S. at 678; *Murschel v. Paramo*, No. 3:17-CV-1142 BTM (AGS), 2018 WL 539159, at *5 (S.D. Cal. Jan. 22, 2018) ("The issuance of a false RVR, alone, does not state a claim under section 1983.") (citing *Dawson v. Beard*, No. 1:15-CV-1867 DLB, 2016 WL 1137029, at *5–6 (E.D. Cal. Mar. 23, 2016)). Instead, claims of arbitrary action by prison officials must grounded in "'the procedural due process requirements as set forth in *Wolff v. McDonnell*.'" *Murschel*, 2018 WL 539159, at *5 (citing *Ellis v. Foulk*, No. 14-CV-802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sep. 18, 2014) (quoting *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984))). "[T]here is no due process right to be free from false disciplinary charges," *Solomon v. Meyer*, No. 11-CV-2827 JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014), because "[t]he Constitution demands due process, not error-free decision-making." *Chavira v. Rankin*, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012); *see also Johnson v. Felker*, No. 2:12-cv-2719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951–53 (2d Cir. 1986)).[5]

Further, to the extent Plaintiff bases the validity of his due process claims on the Ninth Circuit's decision in *Devereaux*, he also fails to allege facts sufficient to sustain a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. In *Devereaux*, the Ninth Circuit recognized "a clearly established constitutional due process right not to be subjected to

---

[5] Plaintiff's February 6, 2018 placement in Ad-Seg alone, without supplemental factual allegations plausibly to show how the conditions of that confinement amounted to "a major disruption in his environment" or were more burdensome than the conditions faced by the general population," *Sandin*, 515 U.S. at 486, is also insufficient to invoke a protected liberty interest. *Id; see also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that placement in administrative segregation is insufficient to state a due process claim); *Saenz v. Spearman*, No. 1:09-cv-0557 YNP PC, 2009 WL 3233799, at *9–11 (E.D. Cal. Oct.1, 2009) (finding a one-year confinement in segregation did not, in and of itself, implicate a protected liberty interest); *Roman v. Knowles*, No. 07CV1343-JLS POR, 2011 WL 3741012, at *14 (S.D. Cal. June 20), *report & recommendation adopted*, 2011 WL 3741007 (Aug. 25, 2011) (same).

18-CV-2313 JLS (MSB)

criminal charges on the basis of false evidence that was deliberately fabricated by the government." 263 F.3d at 1074–75; *see also Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111–12 (9th Cir. 2010) (relying on *Devereaux* to hold that a state investigator "who deliberately mischaracterizes witness statements in her investigative report also commits a constitutional violation"). To state such a claim, however, Plaintiff's Complaint must include factual content to show that "(1) Defendants continued their investigation of [Plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076 (citation omitted). "The *Devereaux* test envisions an investigator whose unlawful motivation is illustrated by her state of mind regarding the alleged perpetrator's innocence, or one who surreptitiously fabricates evidence by using coercive investigative methods." *Costanich*, 627 F.3d at 1111. "These are circumstantial methods of proving deliberate falsification." *Id.* To establish a substantive due process violation, "a plaintiff must show both a deprivation of liberty and conscience shocking behavior by the government." *Brittain v Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (footnote omitted). The Ninth Circuit has held that, in the context of a § 1983 suit against police officers for a due process violation, official conduct "shocks the conscience" when the officer "either consciously or through complete indifference disregards the risk of an unjustified deprivation of liberty." *Tatum v. Moody*, 768 F.3d 806, 820-21 (9th Cir. 2014).

Based on this precedent, the Court finds Plaintiff fails to state a due process claim upon which relief can be granted as to any Defendant. Plaintiff's exhibits show that while Bravo's February 7, 2018 RVR and Incident Report Log No. RJD-CEN-18-02-0072 were referred to the San Diego County District Attorney's Office for "criminal prosecution consideration," the DA "elected not to pursue the matter" on November 29, 2018, and referred the incident back to RJD to be "handled administratively." *See* Opp'n at 39; Sur-Reply at 3. Plaintiff was subsequently found guilty of the administrative offense of

"behavior which could lead to violence" in violation of section 3005(a) of title 15 of the California Code of Regulations as the result of a prison disciplinary hearing held on December 23, 2018, and based on a preponderance of the evidence. *See* Opp'n at 40–43.

*Devereaux* involves a substantive due process right not to be subjected to *criminal* charges on the basis of false evidence deliberately fabricated by the government. Because prison segregation and internal disciplinary procedures are "administrative measure[s]," *Devereaux* is inapplicable. *See Clark v. Brazelton*, No. 1:15-CV-00350-JLT-PC, 2015 WL 7017013, at *4 (E.D. Cal. Nov. 12, 2015) (citing *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003); *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997)).

Further, even if *Devereaux* did apply, Plaintiff fails to allege sufficient facts to state a plausible claim upon which relief can be granted. Specifically, Plaintiff must allege facts sufficient to show that both Hall's February 6, 2018 CDCR 837-C Incident/Staff Report Log No. RJD-CEN-18-02-0072 and Defendant Bravo's subsequent February 7, 2018 Rules Violation Report based on that incident were issued with an unlawful motivation despite Plaintiff's innocence or were "surreptitiously fabricate[d]" and based on evidence gathered through "coercive investigative methods." *Costanich*, 627 F.3d at 1111. While Plaintiff does contend Defendant Bravo's involvement was retaliatory and that his decision to charge Plaintiff with threatening a public official was unfounded because Hall was a "private sub-contractor" and "not a public official," *see* Compl. at 9, Plaintiff also admits he was involved in an "argument" involving racially derogatory epithets with Hall at the worksite on the date in question. *See id.* at 10. Plaintiff's claims of having been later subject of overzealous or retaliatory adverse action that resulted in Ad-Seg placement pending disposition of the charges filed against him do not equate with claims of factual innocence. In fact, Plaintiff's own exhibits show he was later found guilty by a preponderance of the evidence of the lesser administrative offense of having committed behavior that could lead to violence. *See* Opp'n at 42. Nor does Plaintiff's Complaint contain any facts plausibly suggesting the disciplinary proceedings that followed the February 5, 2018 incident involving Hall in any way "shock the conscience" or involve

"complete indifference disregard[ing] the risk of an unjustified deprivation of liberty." *Tatum*, 768 F.3d at 820-21.

For all these reasons, the Court finds Plaintiff has failed to allege facts sufficient plausibly to show any due process violation with respect either to his initial placement in Ad-Seg in February 6, 2018, or his retention there while his disciplinary proceedings remained pending.

### C.    *"Favorable Termination" Rule*

Finally, because the Court finds that Plaintiff's Complaint fails to state a Fourteenth Amendment due process claim as to any Defendant, it need not also determine whether those purported claims would also be barred by *Heck* and *Edwards*—although that seems doubtful given the subsequent restoration of Plaintiff's lost custody credits. *See* Opp'n at 17.

Defendants correctly note that when a prisoner challenges the legality or duration of his custody or raises a constitutional challenge that could impact his release date, his sole federal remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). When seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 487–88. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 488. This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 643–47 (1997).

But "the *Heck* bar as explained in *Edwards* 'applies only to administrative determinations that "necessarily" have an effect on "the duration of time to be served.'" *Nettles v. Grounds*, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc) (quoting *Muhammad*

*v. Close*, 540 U.S. 749 (2004) (per curiam)), *cert. denied*, 137 S. Ct. 645 (U.S. 2017). *Nettles* holds that "[i]f the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983." 820 F.3d at 929; *Ramirez*, 334 F.3d at 856 ("[T]he applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement."); *see also Delgado v. Gonzalez*, No. 1:12-CV-00319-AWI-SKO PC, 2018 WL 903553, at *3 (E.D. Cal. Feb. 15, 2018). "If success in a 1983 lawsuit does not cause an immediate release or a shorter stay in prison, the *Heck* bar does not apply." *Luster v. Amezcua*, No. 1:16-CV-00554-LJO-GSA PC, 2019 WL 1442992, at *6 (E.D. Cal. Apr. 1, 2019).

Here, Plaintiff alleges to have been "stripped" of "earned privileges and credits" as a result of Defendants Bracamonte, Paramo, Juarez, Covello, Villafuerte and Vogel's decisions to retain him in Ag-Seg pending resolution of Defendant Bravo's "fictitious rule violation." Compl. at 14, 15. Defendants claim Plaintiff should not be "permitted to proceed with his due process claim until the underlying guilt finding is overturned." Defs.' P&As at 15. But Plaintiff fails to state a due process claim anyway; Plaintiff contends in his Opposition that the custody credits he lost as a result of his disciplinary conviction have since been "fully restored," *see* Opp'n at 17; Sur-Reply at 3; and Defendants do not address the effect of Plaintiff's restored credits in their Reply. *See generally* ECF No. 17.

Consequently, the Court need not decide whether Plaintiff's due process claims are also subject to dismissal pursuant to the "favorable termination" requirements of *Heck* and *Edwards*. It is clear Plaintiff fails to state a due process claim for the other reasons discussed above.

## II. Retaliation and "Use of Force" Claims

Defendants next seek dismissal of Plaintiff's First Amendment retaliation and Eighth Amendment excessive force claims as to all Defendants except Officer Bravo. *See* Defs.'

P&As at 15–17. Specifically, Defendants claim only Defendant Bravo "was allegedly aware of the settlements in [his] civil cases," the "described retaliatory conduct is only attributed to Bravo," and "any claim of retaliatory conduct attributed to the April 12, 2018 hearing is barred by *Heck* and *Edwards*."[6]  *Id.* at 16, 17.  As to Plaintiff's allegations of excessive force, Defendants claim they are "brief and relate only to Bravo allegedly pushing and assaulting Plaintiff during the [July 24, 2017] contraband search." *Id.* at 17. Defendant Bravo, however, does not seek dismissal of those Eighth Amendment claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff does not raise excessive force claims against any Defendant other than Officer Bravo.[7]

_____

[6]  Defendants provide no explanation and make no legal argument as to why or how *Heck* and *Edwards* would serve as a legal bar to any claims of *retaliation* based on the alleged "kangaroo hearing" Plaintiff claims was held on April 12, 2018, "7 days past [his] earliest release date from Ad-Seg of 4/5/18." *See* Compl. at 14.  As noted above, Defendants do not address how the subsequent restoration of Plaintiff's conduct credits with relation to his December 23, 2018 disciplinary conviction for RVR Log No. 4393632 for "behavior which could lead to violence" affects the purported *Heck* bar.  Further, it is not at all clear from Plaintiff's pleading alone how success on the merits of his alleged retaliatory segregation claim would "necessarily imply the invalidity" of his ultimate disciplinary conviction.  *See Heck*, 512 U.S. at 487; *Wilkerson*, 772 F.3d at 840 (*Heck* does not bar a § 1983 claim that will have no impact on a prisoner's conviction or the duration of his or her sentence); *see also Delgado v. Gonzalez*, 686 F. App'x 434, 434–35 (9th Cir. 2017) (vacating district court's dismissal of inmate's § 1983 complaint alleging a retaliation claim in connection with an allegedly false RVR because the record did not make clear whether the prisoner's loss of sixty days good-time credit would necessarily affect the length of time served).  Without such information, the Court cannot determine whether *Heck* and *Edwards* bar *any* of Plaintiff's claims. *See Starkey v. Hernandez*, No. 3:17-CV-1158-JLS-KSC, 2019 WL 1793348, at *8 (S.D. Cal. Apr. 24, 2019) (denying summary judgment where defendant "supplied no legal authority to support his argument that *Heck* necessarily barred [prisoner's] retaliation claim, and [did] not give any reason why Plaintiff's disciplinary conviction would be invalidated if he were to prevail on his retaliation claims"); *accord Campbell v. Dickey*, No. 1:14-CV-00918 DAD BAM PC, 2018 WL 3814724, at *3 (E.D. Cal. Aug. 9), *report & recommendation adopted*, 2018 WL 4057266 (Aug. 24, 2018).

[7]  Plaintiff claims both Defendant Bravo and Defemdamt Alvarez violated his Eighth Amendment rights during the July 24, 2017 incident.  First, Plaintiff alleges Officer Bravo "us[ed] excessive force" while conducting a "body search-pat down" "behind the construction site and out of site of [the] other officer and sergeant," "without need or provocation" and "maliciously and sadistically."  *See* Compl. at 6, 13. Second, Plaintiff claims Sgt. Alvarez "fail[ed] to intervene to prevent [Bravo's] misuse of force."  *Id.* at 13.  Because Defendant Bravo does not challenge the sufficiency of Plaintiff's Eighth Amendment excessive force claims, the Court does not address them.  As to Plaintiff's Eighth Amendment failure to protect claims against Defendant Alvarez, they are analyzed separately.  *See infra* Section III.

With respect to Plaintiff's retaliation claims, Defendants focus on three separate incidents: 1) the July 24, 2017 contraband search involving Officer Bravo and Sgt. Alvarez; 2) the July 27, 2017 RVR issued by Officer Bravo charging Plaintiff with "overfamiliarity," and 3) Officer Bravo's allegedly falsified incident report dated February 6, 2018 alleging Plaintiff had threatened to kill Defendant Hall on the job site. *See* Defs.' P&As at 16–17.

In his Complaint, however, Plaintiff claims that, in addition to his specific allegations against Officer Bravo, *see* Compl. at 5–9, 11–12, Sgt. Alvarez told him, "Here at Donovan we don't care if you sue us," after Sgt. Alvarez and Officer Bravo conducted a contraband search of Plaintiff's worksite on July 24, 2017, and Officer Bravo subjected Plaintiff to a "truculent" and "disrespectful" pat down and strip search. *Id.* at 7. With respect to Correctional Captain Bracamonte, Plaintiff alleges he was "in charge of Facility 'C'"; "responsible for inmate's administrative review on the first working day following Ad-Seg placement," *id.* at 5; and, at some unspecified time after Plaintiff was "illegally placed in Ad-Seg" on February 6, 2018, uttered what Plaintiff describes as "a credible threat[:] 'Now you['re] going into my yard, you will see how we deal with lawsuit and staff complaint filers.'" *Id.* at 12. Last, Plaintiff claims Warden Paramo authored a letter dated October 23, 2017, in which Warden Paramo reported Plaintiff's allegations of retaliation on Officer Bravo's part had been "determined to be unfounded." *Id.* at 8.[8]

As to the remaining moving Defendants, Associate Wardens Juarez and Covello, Plaintiff claims they too retaliated against him "for exercising his First Amendment right to petition the court" because he "successfully litigat[ed]" *Garcia v. Hernandez*, E.D. Cal.

---

[8] Plaintiff attaches a copy of Warden Paramo's October 23, 2017 letter as an exhibit to his Opposition. *See* Opp'n at 66. In it, Warden Paramo responds to a letter written by Plaintiff dated July 27, 2017, "regarding allegations that Correctional Officer Bravo subjected [him] to unwarranted clothed and unclothed body searches . . . in retaliation for [his] having filed lawsuits against the California Department of Corrections and Rehabilitation." *Id.* Warden Paramo reported that Plaintiff's allegations had "been looked into" and "were determined to be unfounded." *Id.* Warden Paramo further advised Plaintiff that "[t]he proper forum to address concerns of these types is via the CDCR 602 process." *Id.*

18-CV-2313 JLS (MSB)

Civil Case No. 1:13-CV-599 LJO, and *Garcia v. Hobmeier*, E.D. Cal. Civil Case No. 1:14-CV-625 LJO, and because he "fil[ed] 602 Grievance / Staff Complaints." Compl. at 12, 13. But it is only in his Opposition that Plaintiff provides any specifics. *See* Opp'n at 18–21. There, Plaintiff contends that while Officer Bravo "initiated" the retaliation alleged in his Complaint by filing "2 false rules violations reports" "due to [his] active litigation," this "led to a staff complaint against Bravo," *id.* at 18–19, and "the remaining defendants were put on notice at least 8 times" via the CDCR 602 inmate grievances and staff complaints he filed related to Officer Bravo's actions and yet still "ignore[d] [Bravo's] false RVRs and fabricated evidence." *Id.* at 20. Plaintiff provides no specifics as to Defendant Juarez but, with respect to Associate Warden Covello, his Opposition identifies three CDCR 602 inmate grievances he allegedly reviewed: (1) CDCR 602 Inmate Grievance Log No. RJD-D-17-3897 (alleging Officer Bravo committed sexual misconduct), on August 29, 2017; (2) CDCR 602 Inmate Grievance Log No. RJD-D-04843 (alleging Plaintiff was wrongfully terminated), on September 28, 2017; and (3) CDCR 602 Inmate Grievance 602 Log No. RJD-C-18-2881 (alleging Plaintiff was subject to a false and retaliatory RVR), on June 18, 2018. *Id.* Plaintiff contends Associate Warden Covello also served as chairperson during the February 15, 2018 classification Ad-Seg placement review hearing. *Id.* at 20, 45–46.

When a prisoner claims retaliation, he must allege facts sufficient to show that: "(1) 'a state actor took some adverse action . . . (2) because of (3) [the] prisoner's protected conduct, . . . that such action (4) chilled [the] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted)).

"Of fundamental import to prisoners is their First Amendment 'right[s] to file prison grievances,' and to 'pursue civil litigation in the courts.'" *Rhodes*, 408 F.3d at 567 (quoting *Bruce*, 351 F.3d at 1288; *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)). Defendants do not dispute that Plaintiff's allegedly "successful" civil litigation in *Garcia*

*v. Hernandez*, E.D. Cal. Civil Case No. 1:13-CV-599 LJO, and *Garcia v. Hobmeier*, E.D. Cal. Civil Case No. 1:14-CV-625 LJO, and his CDCR 602 inmate grievances and/or staff complaints constitute "protected conduct." *See* Compl. at 12, 13; *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.") (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).

Nor do Defendants deny that a prisoner like Plaintiff who alleges to have been placed in administrative segregation based on "false disciplinary charges" suffers "adverse action." *Id.* at 1115; *Shepard*, 840 F.3d at 691 ("[T]he harm suffered by prisoners in administrative segregation is significantly more than minimal."). Indeed, a "mere threat of harm," like "'I'm go[nna] send you to ad-seg for reporting my officer' is enough'" to constitute adverse action in the context of a retaliation claim. *Shepard*, 840 F.3d at 688–89 (quoting *Brodheim*, 584 F.3d at 1270).

Finally, Defendants do not argue that Plaintiff's Complaint fails to allege facts sufficient to show that his First Amendment rights were "chilled" as a result of the retaliatory acts alleged in his Complaint, *see Rhodes*, 408 F.3d at 568–69 (noting that plaintiff need not show "his speech was actually inhibited or suppressed," but only that the adverse action at issue "would chill or silence a person of ordinary firmness from future First Amendment activities"), or claim he has failed to allege that the adverse actions allegedly taken against him—*i.e.*, an unreasonably forceful or harassing contraband search, the issuance of "false" RVRs, and placement or retention in Ad-Seg—failed to "reasonably advance [] legitimate correctional goal[s]." *Rhodes*, 408 F.3d at 568; *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (requiring prisoner alleging retaliation to "bear[] the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains").

Instead, Defendants focus only on the causation element of Plaintiff's retaliation claims. *See Shepard*, 840 F.3d at 689 (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). They argue that "none of the other Defendants" were aware of either Plaintiff's lawsuits or

22

his grievances and, therefore, could not have had a "retaliatory motive" because only Officer Bravo is alleged to have been aware of Plaintiff's pending litigation on July 24, 2017, when he and Sgt. Alvarez conducted a contraband search of Plaintiff's worksite and person; only Officer Bravo is alleged to have filed a false RVR on July 27, 2017, and another false RVR on February 6, 2018; and only Officer Bravo is alleged to have been the subject of Plaintiff's subsequent CDCR 602 appeals and staff complaints. Defs.' P&As at 16–17.

As pleaded, Defendants are correct to acknowledge that Plaintiff's Complaint is replete with factual allegations in support of Officer Bravo's allegedly retaliatory intent. Specifically, Plaintiff claims Bravo: (1) "found out" he was suing CDCR during an escort on February 7, 2017, *see* Compl. at 6; (2) "commented to Sgt. Alvarez that [he] was suing CDCR" on July 24, 2017, following a contraband search of his worksite and person, *id.* at 7; (3) "voiced a credible threat" that Plaintiff had "better quit or else," during an escort back to his housing unit on that same day, *id.*; (4) threatened Plaintiff again on the next day, July 25, 2017, that if Plaintiff did not "quit voluntarily" Officer Bravo would "write Plaintiff up a 115 Rule Violation to get [him] fired," *id.*; (5) filed a "false" RVR charging Plaintiff with "overfamiliarity" on July 27, 2017, that was ultimately dismissed on September 4, 2017, *id.*; (6) "commented" on "various occasions" that Plaintiff "would not get his job back due to [his] submitting a 602-staff complaint appeal (see RJD-D-17-3897 dated 7/25/2017)," *id.* at 7–8; (7) threatened Plaintiff sometime between the dismissal of the July 27, 2017 RVR charges and before Plaintiff withdrew his CDCR 602 staff complaint on September 28, 2017, that if Plaintiff did not "stop filing staff complaint[s]," Plaintiff would be "transferred out," *id.* at 8; (8) "falsified" or "altered" a February 6, 2018 RVR related to incident report Log No. RJD-CEN-18-02-0072, *id.* at 8–9; (9) "made a loud comment 'That's what happens when you file lawsuits,'" on February 6, 2018, while escorting Plaintiff to Ad-Seg, *id.* at 9; and (10) after Plaintiff had been placed in Ad-Seg and charged with "threaten[ing] to kill" sub-contractor Hall, encountered Plaintiff outside

/ / /

a clinic on February 7, 2018, and stated in a "burlesque voice," "Now you can file more lawsuits; we don't care." *Id.* at 9.

Presumed true, these allegations are more than sufficient plausibly to show a causal connection between Officer Bravo's adverse actions and the exercise of Plaintiff's First Amendment rights. *See Watison*, 668 F.3d at 1114. As to Defendant Alvarez's alleged comments on Plaintiff's then-pending civil litigation following immediately on the heels of the July 27, 2017 contraband search of his worksite and person, *see* Compl. at 6–7, and Defendant Bracamonte's "credible threat" following Plaintiff's placement in segregation on February 6, 2018, *id.* at 12, the Court also finds them sufficient to suggest both knowledge of Plaintiff's protected conduct and a plausible retaliatory intent given their alleged "proximity in time" to the adverse actions preceding them. *See Watison*, 668 F.3d at 1115–16 (finding statements such as, "Your emergency grievance isn't going to stand," and, "They're not going to do nothing with those grievances you filed against me," sufficient to suggest officer's conduct was retaliatory); *Shepard*, 840 F.3d at 690 (threats to segregate inmate if he reported wrongdoing followed by same-day transfer after inmate refused to recant sufficient to suggest transfer was "motivated by a desire to retaliate") (citing *McCollum v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011)).

Defendants characterize Alvarez and Bracamonte's alleged remarks as "benign" and "selective dialogue"—insufficient plausibly to suggest any "retaliatory motive." *See* Defs.' P&As at 17, 18. But direct evidence of retaliatory intent rarely can be pleaded in a complaint, and Ninth Circuit precedent has long held factual allegations like Plaintiff's, setting forth a chronology of events from which retaliation can be reasonably inferred, suffice to survive a 12(b)(6) dismissal motion. *Watison*, 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")); *Bruce*, 351 F.3d at 1288-89.

The allegations in Plaintiff's Complaint as to Warden Paramo and Associate Wardens Covello and Juarez, however, do fail to state a plausible retaliation claim. Specifically, Plaintiff contends only that Warden Paramo "mailed/authored a letter" to

Plaintiff dated October 23, 2017, in which Warden Paramo rejected Plaintiff's allegations of Officer Bravo's retaliatory behavior as "unfounded." *See* Compl. at 8. Plaintiff's allegations against Associate Wardens Covello and Juarez are even more tenuous: Plaintiff claims only that they, together with Warden Paramo, failed to "take disciplinary or other action to curb the known pattern of . . . excessive force, retaliation against grievance filers, [and] false rules violations reports," used by Defendants Bravo, Alvarez, and Bracamonte.[9] *Id.* at 14. Thus, while Plaintiff alleges Warden Paramo and Associate Wardens Covello and Juarez may have been aware of Officer Bravo's retaliatory behavior towards him because of their roles as either supervisors or reviewers in the inmate appeals process, Plaintiff alleges no additional facts to suggest any of them took "adverse action" against him because he complained via CDCR 602 inmate appeals or because he engaged in other protected conduct. *See Dragasits v. Rucker*, No. 3:18-cv-00512-WQH-AGS at *5, 2019 WL 4276072 (S.D. Cal. Sept. 6, 2018) (noting that the denial of a grievance or administrative appeal by itself does not amount to an adverse action sufficient to deter a person of ordinary firmness from further First Amendment activities); *see also Dicey v. Hanks*, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) ("[D]enial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of "ordinary firmness" from further First Amendment activities.") (collecting cases); *accord Garcia v. Sleeley*, No. 3:14-CV-01525-JLS-RBM, 2019 WL 2234789, at *9 (S.D. Cal. May 22, 2019).

## III. Eighth Amendment Failure to Protect Claims

Next, Defendants seek dismissal of Plaintiff's claims that Sgt. Alvarez failed to protect him from Officer Bravo's use of excessive force during the July 24, 2017

---

[9] As noted above, Plaintiff's Opposition claims that these "remaining defendants were put on notice at least 8 times" due to "602 inmate grievances and staff complaints [he] properly submitted," *see* ECF No. 16 at 19, and Plaintiff identifies Associate Warden Covello as having reviewed several of those specific appeals. *See id.* at 20. These allegations, however, do not appear in Plaintiff's Complaint; consequently, the Court may not consider them when determining whether his pleading states a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Schneider*, 151 F.3d at 1197 n.1.

contraband search and that Warden Paramo and Associate Wardens Juarez and Covello acted with deliberate indifference to Plaintiff's safety by failing adequately to supervise or take disciplinary action against Defendant Bravo, Alvarez, and Bracamonte—thereby exposing Plaintiff to retribution, abuse, and threats of violence. *See* Defs.' P&As at 17–19.

When another officer is alleged to have used unreasonable force against a prisoner "maliciously and sadistically" in violation of the Eighth Amendment, as Plaintiff alleges Officer Bravo did during his July 24, 2017 strip search for contraband, *see* Compl. at 6, 13; *Hudson v. McMillian*, 503 U.S. 1, 7 (1992), other officers may also be held liable if they had a realistic opportunity to intervene but failed to do so. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *see also Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994) ("A failure of prison officials to act in such circumstances suggests that the officials actually wanted the prisoner to suffer the harm.").

To state a claim for failure to intervene, Plaintiff must allege Sgt. Alvarez: (1) "was aware that [Plaintiff] faced a specific risk of harm from [Officer Bravo's] use of excessive force"; and (2) "had a reasonable opportunity to intervene to stop it." *Solano v. Davis*, No. CV 13-01164-ODW, 2014 WL 6473651, at *7 (C.D. Cal. Nov. 17, 2014) (citing *Ting v. United States*, 927 F.2d 1504, 1511–12 (9th Cir. 1991)); *cf. Cunningham*, 229 F.3d at 1289 ("[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede."); *accord Caliz v. City of Los Angeles*, No. CV 15-5161-JLS (KS), 2018 WL 7501583, at *5 (C.D. Cal. Nov. 2), *report & recommendation adopted*, 2018 WL 7501289 (Dec. 13, 2018).

Here, Plaintiff contends Sgt. Alvarez violated his Eighth Amendment rights by "failing to intervene to prevent [Officer Bravo's] misuse of force" while Plaintiff was forcefully pushed against a wall, patted down, and then strip searched. *See* Compl. at 13. Plaintiff alleges, however, that Officer Bravo handcuffed Plaintiff while Sgt. Alvarez and his work supervisor inspected the worksite and "then ordered [him] to stand and escorted

[him] *behind the construction site and out of site [sic] of [the] other officer and sergeant*" before Officer Bravo proceeded to conduct the pat-down; "push[ed] [him] face first into the wall," while "grabbing [his] 'privates'" from behind; and then "conducted a strip search in a very truculent [manner] and [using a] disrespectful tone." *Id.* at 6 (emphasis added). It was only *after* Officer Bravo ordered Plaintiff to get dressed that Plaintiff alleges to have been "re-cuffed and . . . escorted back where Sgt. Alvarez and [his] supervisor w[]ere standing." *Id.* at 6–7.

In his Opposition, Plaintiff charges Defendants with "incorrectly translat[ing] the word site into sight" and claims that Sgt. Alvarez "did observe the search and knew the risk, . . . but did not stop it or intervene." *See* Opp'n at 21. But this is clearly *not* what he claims in his Complaint, and Plaintiff cannot simply change the facts as he originally alleged them by offering a contrary version of events in response to Defendant's motion to dismiss. *See Aktar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (court may not consider new facts provided in an opposition to a motion to dismiss). Regardless of spelling, because Plaintiff clearly contends Officer Bravo escorted him "behind the construction site and out of site [sic]" of Sgt. Alvarez to conduct his body-search and pat down, *see* Compl. at 6, and his Complaint contains no additional factual content allowing the Court to draw a reasonable inference that Sgt. Alvarez knew Officer Bravo was using excessive force or had a "realistic opportunity" to intervene yet failed to do so, Plaintiff fails to state a plausible Eighth Amendment failure to protect claim as to Sgt. Alvarez. *See Lolli*, 351 F.3d at 418 (granting summary judgment on behalf of sheriff's deputies who "were not present at the scene" because "any liability for failing to intervene in the beating would not attach to them"); *see also Iqbal*, 556 U.S. at 678.

Finally, Defendants Paramo, Covello, and Juarez seek dismissal of Plaintiff claims that they "failed to take disciplinary or other action" to curb Defendants Bravo, Alvarez, and Bracamonte's "known pattern" of abuse and retaliation, and that this failure "constituted deliberate indifference . . . [to] Plaintiff's . . . safety." *See* Compl. at 14. Plaintiff claims to "strongly believe[] that he will be assaulted or killed" because "it is well

27

documented that RJD C Yard Level 4 is plagued with abusive and violent corrections officers [who] have murdered, assaulted, and set up many inmates who[] have filed grievances." *Id.* at 12.

To state a claim against supervisors like Warden Paramo and Associate Wardens Covello and Juarez under § 1983, however, Plaintiff must allege facts sufficient to show that each of them, "through [their] own individual action[], has violated the Constitution." *Iqbal*, 556 U.S. at 676. "That means [he] must show that each defendant personally played a role in violating the Constitution." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). A prison "official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)). Thus, a "supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)).

A "causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (internal quotation marks and citations omitted; alterations in original). A supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

No factual allegations in Plaintiff's Complaint, however, are sufficient plausibly to show how, or to what extent, Warden Paramo or Associate Wardens Covello and Juarez were personally involved in any violation of Plaintiff's First, Eighth, or Fourteenth Amendment rights, and no facts demonstrate a causal connection between Defendants

Paramo, Covello, and Juarez and Defendants Bravo, Alvarez, and Bracamonte's allegedly retaliatory acts or "pattern of abuse." *See* Compl. at 14; *Hines*, 914 F.3d at 1228; *Starr*, 652 F.3d at 1207–08; *see also Iqbal*, 556 U.S. at 676.

Instead, Plaintiff claims only that Warden Paramo wrote a letter in October 2017, several months after Plaintiff's initial interactions with Officer Bravo in July, informing Plaintiff that his reports of Officer Bravo's retaliatory behaviors had been determined to be unfounded and instructing Plaintiff to use the CDCR 602 inmate appeals process to address his concerns. *See* Compl. at 8; Opp'n at 66. With respect to Associate Wardens Covello and Juarez, Plaintiff implicates them in his due process claims, *see* Compl. at 14, but offers no further factual content to suggest how they were aware of any objectively serious threat to his safety or acted with deliberate indifference to any substantial risk that he would be seriously harmed. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1992) (Eighth Amendment failure to protect claims requires prisoner to allege facts which show that "the official[s] [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the officials] must also draw the inference"); *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'") (quoting *Farmer*, 511 U.S. at 847).

For all these reasons, the Court finds Plaintiff fails to state any plausible Eighth Amendment claim for relief against Defendants Alvarez, Paramo, Covello, or Juarez.

**IV.** ***Sua Sponte* Dismissal of Unserved Defendants Hall, Vogel, and Villafuerte**

Finally, it appears Plaintiff has failed to execute service of upon Defendants Hall, Vogel, and Villafuerte within the 90 days provided by Federal Rule of Civil Procedure 4(m). *See Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) ("[N]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4.").

18-CV-2313 JLS (MSB)

Having carefully considered all the allegations in Plaintiff's Complaint as the result of the moving Defendants' Motion to Dismiss, however, the Court now finds it must also *sua sponte* dismiss the remainder of Plaintiff's Complaint as to Defendants Hall, Vogel, and Villafuerte pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failing to state a claim upon which relief may be granted. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("It is . . . clear that section 1915(e) not only permits but requires a district court to [sua sponte] dismiss an in forma pauperis complaint" "at any time" if the court determines that it fails to state a claim) (citing 28 U.S.C. § 1915(e)(2)(B)(ii)); *see also Chavez v. Robinson*, 817 F.3d 1162, 1167 (9th Cir. 2016) ("The statute governing IFP filings requires a court to dismiss an action 'at any time' if it determines that the complaint 'seeks monetary relief against a defendant who is immune from such relief' . . . [and even] before the defendants have been served and affirmatively raised the issue in a responsive pleading.") (citing 28 U.S.C. § 1915(e)(2)(B)(iii)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison*, 668 F.3d at 1112; *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (noting that "the sua sponte screening and dismissal procedure is cumulative of . . . any . . . Rule 12(b)(6) motion that [a defendant] may choose to bring").

Plaintiff's Complaint fails to state any First, Eighth, or Fourteenth Amendment claim against Defendants Hall, Vogel, or Villafuerte for the same reasons he fails to state plausible claims for relief against the moving Defendants pursuant to Rule 12(b)(6). Consequently, the Court dismisses Plaintiff's claims against them *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1). *See Lopez*, 203 F.3d at 1127; *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to 28 U.S.C. § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

The only other named Defendant, Scott Kernan, the former Secretary of the California Department of Corrections and Rehabilitation, was similarly dismissed on

respondeat superior grounds pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A during initial screening.  *See* ECF No. 5 at 6–8.

## CONCLUSION

Based on the foregoing, the Court:

1.      **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 14).  Specifically, the Court **DENIES** Defendants' Motion as to Plaintiff's First Amendment retaliation claims against Defendants Bravo, Alvarez, and Bracamonte; **GRANTS** Defendants' Motion as to Plaintiff's Fourteenth Amendment due process and Eighth Amendment failure to protect claims against all Defendants; and **GRANTS** Defendants' Motion as to Plaintiff's pendent state law claims for battery, assault, and negligence based on his failure to comply with the California Government Claims Act;

2.      **DISMISSES** *sua sponte* all claims alleged in Plaintiff's Complaint against unserved Defendants Hall, Vogel, and Villafuerte for failing to state any claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

3.      **ORDERS** Defendant Bravo to file an Answer as to the First Amendment retaliation and Eighth Amendment excessive force claims alleged against him in Plaintiff's Complaint and Defendants Alvarez and Bracamonte to file an Answer as to the First Amendment retaliation claims alleged against them in Plaintiff's Complaint within the time provided by Federal Rule of Civil Procedure 12(a)(4)(A).

**IT IS SO ORDERED**.

Dated:  July 30, 2019

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

18-CV-2313 JLS (MSB)